[No. D051552. Fourth Dist., Div. One. Mar. 11, 2009.]

ROBERT J., Plaintiff and Appellant, v.
CATHERINE D., Defendant;
JEFFREY C. FRITZ, Objector and Respondent.

1502

### COUNSEL

Luce, Forward, Hamilton & Scripps, Charles A. Bird; Kolodny & Anteau and Ronald W. Anteau for Plaintiff and Appellant.

Stephen M. Hogan; Bruce M. Beals; Hurst & Hurst, Debra L. Hurst and Loren G. Freestone for Objector and Respondent.

### OPINION

**BENKE, Acting P. J.**—We are called on in this case to decide an issue of first impression in this state; namely, *when* must a party falsely accused of

child abuse or neglect allegations in a child custody proceeding move for sanctions under Family Code[1] section 3027.1 against the person or persons who made such allegations. Because section 3027.1 is silent on the issue, absent further direction from the Legislature we conclude equitable principles apply to determine the timing of a section 3027.1 sanctions motion. Based on such principles and the public policy of ensuring the best interest of children prevails in child custody cases, we further conclude a party moving for section 3027.1 sanctions must file his or her motion on or before the earliest of 60 days after the judgment or order exonerating him or her from such allegations is served, or 180 days from the entry of such judgment or order.

Plaintiff and appellant Robert J. dated Catherine D. briefly and they had one child together, a daughter.[2] During the course of child custody proceedings involving their daughter, Robert contends Catherine falsely accused him of child abuse or neglect. Almost two years after Catherine initially made such allegations against Robert, the court entered judgment granting Robert full legal custody of their daughter and exonerating him of such allegations.

One day less than a year after the final order, Robert moved for sanctions against Catherine *and* one of her former attorneys, objector and respondent Jeffrey C. Fritz, on various grounds, including those noted under section 3027.1 for the false child abuse or neglect accusations Catherine made against Robert, which Fritz, as her attorney of record, repeated during the course of representing Catherine in the custody proceedings. Section 3027.1 gives a court discretion to impose monetary sanctions against a party, the party's attorney or a witness if the moving party establishes that the accusation of child abuse or neglect was made in a child custody proceeding, the accusation was false and the person or persons making it knew it was false when the accusation was made. Robert sought in excess of $750,000 in sanctions against Catherine and Fritz for the attorney fees and costs he incurred in the child custody proceedings, of which he claims at least $250,000 was to defend himself from the child abuse or neglect accusations.

Fritz alone moved to quash Robert's section 3027.1 motion, arguing it was untimely and deprived the court of subject matter jurisdiction. The court disagreed, but on its own treated the motion to quash as a motion to strike. The court applied the one-year limitations period under Code of Civil Procedure section 340, subdivision (c), applicable to defamation, analogizing a "claim for damages for false accusations" under section 3027.1 to slander, and struck any allegations of child abuse or neglect not made within a year of the filing of Robert's motion. The court dismissed the motion against Fritz,

---

[1] All further statutory references are to the Family Code unless otherwise specified.

[2] Because this appeal arises out of a parentage action and all court filings are deemed confidential to protect the privacy of the child, we use only the first names of the parents.

but not Catherine, after Robert acknowledged the motion could not succeed in light of the court's ruling.

On appeal, Robert argues the court erred when it borrowed and applied to section 3027.1 the one-year limitations period under Code of Civil Procedure section 340, subdivision (c). Robert instead claims the court should have applied a presumptive deadline under the equitable doctrine of laches based on the tort of malicious prosecution, which he claims is the most analogous tort to a section 3027.1 sanctions motion. Robert thus argues the deadline to file his motion was two years from the date of the judgment exonerating him.

As we explain, we conclude that neither a two-year limitations period based on malicious prosecution nor a one-year period based on defamation govern the timing of a motion for sanctions under section 3027.1. There being no statute and no rule setting a deadline to move for section 3027.1 sanctions, absent further direction from the Legislature we agree with Robert that equitable principles apply to determine the timing of a section 3027.1 sanctions motion.

As we further explain, in light of the Legislature's findings and declaration that the public policy of ensuring the health, safety and welfare of children shall be the "primary concern" of courts in determining the best interest of children in child custody proceedings, and to ensure consistency among related statutes in the Family Code, we conclude a party moving for section 3027.1 sanctions should file his or her motion on or before *the earliest of* 60 days after the judgment or order exonerating him or her from child abuse or neglect allegations is served, or 180 days from the entry of such judgment or order. These deadlines are drawn from California Rules of Court,[3] rules 3.1702, 8.104 and, if appropriate, rule 8.108, applicable to motions for recovery of attorney fees in civil proceedings, which rules also apply in family law proceedings. (See rule 5.21.) We further conclude that if a party files his or her section 3027.1 motion after the presumptive deadlines set forth in these rules, the burden shifts to the movant to show that his or her delay was excusable and that such delay did not result in undue prejudice to the opposing party or person who is the subject of the motion.

Here, Robert did not file his section 3027.1 sanctions motion until one day less than a year after the judgment exonerating him from Catherine's allegations of child abuse or neglect. However, because this is an issue of first impression in our state, we conclude it would be unfair to Robert to apply

---

[3] All further rule references are to the California Rules of Court. Rules 3.1702 and 8.104 became effective on January 1, 2007. The rules governing Robert's motion, which he filed in July 2006, are former rule 870.2, which is now rule 3.1702, and former rule 2, which is now rule 8.104. Rules 3.1702 and 8.104 are substantively equivalent to their former counterparts.

this procedural rule retroactively. We therefore reverse the order of the trial court dismissing Robert's section 3027.1 sanctions motion against Fritz and remand for the trial court to consider that motion, on its merits.

## FACTUAL AND PROCEDURAL BACKGROUND

Robert and Catherine dated a few months in 1999, but never married. They had one child together, a daughter born in April 2000. By stipulation and order, the court awarded Robert sole physical custody, and Catherine and Robert joint legal custody, of their daughter.

### A. *Accusations of Child Abuse or Neglect by Catherine*

In early September 2003, Catherine filed an order to show cause seeking modification of child custody, child visitation and child support, an order for psychological evaluation and attorney fees and costs (custody OSC). In support of her custody OSC, Catherine filed a declaration Robert contends falsely accused him of child abuse or neglect (hereinafter, the child abuse or neglect allegations).[4]

In her declaration, Catherine described Robert's parenting and their daughter's living conditions as follows:

"[S]ince the birth of our daughter, [Robert] has demonstrated that his parenting of our daughter is neglectful, un-nurturing and dangerous to our daughter's well being. [Robert's] parenting of our daughter has proven to be wholly adverse to the best interest of our daughter.

". . . Since our daughter's birth, she has been raised in [Robert's] residence by a series of nannies too numerous to count. Our daughter has been neglected emotionally and deprived of the opportunity to be nurtured and raised by a parent or individual with whom she has a relationship . . . and is bonded to. [Our] [t]hree (3) year old [daughter] has virtually been raised by strangers.

". . . Additionally, our daughter's living conditions in [Robert's] home are filthy and hazardous. [Robert] has numerous cats, dogs and birds totaling more than ten animals that live inside his residence and are permitted to urinate and defecate freely throughout the house. The smell of the inside of [Robert's] home is unbearable and the animal feces and waste is repulsive.

---

[4] The issue before us is purely a procedural one. We therefore do not decide in this appeal whether the child abuse or neglect allegations are false, whether they rise to the level of "child abuse or neglect" for purposes of section 3027.1, whether Fritz knew they were false if and when he repeated them, and so on.

Our daughter has been bitten by [Robert's] dog . . . and scratched by [his] cats. These living conditions coupled with [Robert's] psychosis is the reason why there have been numerous nannies and housekeepers, too multiple to count, who have worked for [Robert]."

Catherine's attorney of record when she filed her custody OSC was Fritz's late law partner, Robert Basie. When Basie passed away, Fritz substituted in as Catherine's attorney of record and represented her from September 11, 2003 (after she filed her declaration in support of the custody OSC), to August 10, 2004.

### B. *Robert Is Awarded Sole Legal Custody of Their Daughter*

Although not clear from the record, at some point after August 10, 2004, Catherine hired new counsel, William E. Blatchley, to represent her in the custody dispute and at trial, which ended in early May 2005. Judgment was entered on July 19, 2005, and Robert was awarded sole legal custody and primary physical custody of their daughter. The court found the evidence "strongly supports a finding that [Robert] is an effective, loving, and appropriate parent and caregiver for [their daughter]," and "did not support the imposition of any restriction on [Robert's] care or custody of [their daughter]." The parties agree it was this finding that exonerated Robert from the child abuse or neglect allegations.

Catherine subsequently opposed Robert's postjudgment motion to move away, which was set for hearing in May 2006. In connection with her opposition, Catherine resubmitted her custody OSC declaration containing the child abuse or neglect allegations, made new accusations of sexual abuse against Robert that he contends were unfounded, and asserted Robert's psychologist failed to report such abuse after she brought it to the psychologist's attention. She also sought an award of attorney fees from Robert to enable her to hire legal counsel to represent her in the May 2006 hearing.

Fritz did not represent Catherine at the May 23, 2006 hearing on Robert's move-away motion. However, Fritz was present for that hearing, after appearing on an unrelated matter in the same courtroom.[5] On June 7, 2006,

---

[5] Robert argues Fritz was Catherine's attorney of record at the move-away hearing. However, the facts in Robert's own declaration show Fritz did not become Catherine's attorney of record (again) until *after* that hearing, as Robert noted: "Not able to let go, less than one year after Judgment [in the child custody case], Mr. Fritz appeared again in our case, at first 'not of record.' He attended (actually stayed in the attorney's area after his *ex parte* was concluded) my 'move away' hearing on May 23, 2006 where [Catherine] filed an opposition declaration which requested legal fees from me to hire Mr. Fritz . . . . After [Catherine] refused to sign my two proposed move away orders from the May 23, 2006 hearing, granting my

Fritz briefly substituted back into the case as counsel of record for Catherine. Robert, who at the time was representing himself, personally served Fritz with a copy of the judgment entered on July 19, 2005, "to ensure that Mr. Fritz was made aware of the matters that remained pending, and that [the trial court] had found [Robert] to be an 'excellent caregiver' of [their daughter]." The matters pending included, among other things, the finalization of the move-away order and other financial issues the court had bifurcated from the custody proceeding.

### C. *Robert Attempts to Settle with Catherine Before Filing His Sanctions Motion*

In mid-June 2006, Robert contacted Fritz and Catherine in writing, stating he intended to file a motion for sanctions under sections 271 and 3027.1, as well as under Code of Civil Procedure section 2023, "if remaining matters were not settled."[6] Robert wanted to reach a "global settlement for peace of mind" and for "[their daughter's] sake." Shortly thereafter, Robert hired legal counsel who contacted Fritz in late June 2006 requesting he stipulate to bifurcate the issues of liability and a monetary award in the (instant) sanctions motion Robert intended to file.

Robert contends Fritz told Robert's legal counsel on July 14, 2006, that Catherine was coming to Fritz's office to sign the settlement agreement. Based on this representation, Robert waited to file his sanctions motion. However, when neither Robert nor his counsel heard from Fritz regarding settlement, Robert went forward and filed his motion on July 18, 2006. After doing so, Robert discovered Fritz had withdrawn as Catherine's attorney of record a day earlier, which Robert claims was done so Fritz could claim he was not Catherine's attorney of record for purposes of the section 3027.1 motion.

Although Robert had already filed his sanctions motion, he wrote Catherine on July 20 and again on July 27, 2006, seeking a global settlement with her. Robert represented to Catherine that if she were willing to enter into a global settlement with him, he would take his sanctions motion against her *and Fritz* off calendar. According to Robert, Catherine did not respond to his offer.

---

motion, *Mr. Fritz substituted in as her attorney of record on June 7, 2006.*" (Italics added.) Robert's argument is thus contrary to the facts in his own declaration.

[6] It is not clear from the record whether Robert's letter apprised Fritz that Robert *also* intended to move for sanctions against him, as this could create a conflict of interest between Catherine and Fritz. (See, e.g., *Wong v. Davidian* (1988) 206 Cal.App.3d 264, 272 [253 Cal.Rptr. 675] ["This court and others have previously noted the ethical, privilege, and conflict problems inherent in a court's decision whether to impose sanctions on the client, the attorney, or both."].) In any event, as we already have noted, the merits of Robert's motion against Fritz are not the subject of this appeal.

### D. *Robert's Motion for Sanctions*

#### 1. *Grounds for Sanctions Under Section 3027.1*

Robert, in propria persona, filed his motion for sanctions against Catherine and Fritz. Specifically against Fritz, Robert alleged:

Fritz "knew from early on that these child abuse/neglect accusations [by Catherine] were false, but nevertheless continued to assert them as a basis for his client's meritless and unsuccessful attempts to obtain sole custody of [our daughter], child support and his excessive and unnecessary attorney fees. For example, I believe that Mr. Fritz knew the allegations of his client were false because:

"(a) [Fritz] was present at [Catherine's] October 13, 2003 deposition [when Catherine] . . . admitted I was a good parent and either recanted or discounted her accusations that I was an abusive/negligent parent. . . .

"(b) [Fritz] was served on October 14, 2003 with 14 third-party declarations, including [from our daughter's] school master and pediatrician, which refuted [Catherine's] accusations. . . .

"(c) [Fritz] took my deposition on October 15, 2003 and reviewed the third party declarations and the notes and cards written by [Catherine], as well as photos, which refuted the neglect/abuse accusations.

"(d) [Fritz] received the October 16, 2003 [family court services] report in which the senior mediator found no evidence or reason to change my custody of [our daughter]. . . .

"(e) [Fritz] had my October 14, 2003 Opposition Declaration and my October 30, 2003 Reply Declaration, which further refuted [Catherine's] child abuse and neglect accusations. . . .

"(f) [Fritz] subpoenaed, without my objection, and received [our daughter's] school and medical records, which showed no evidence of abuse or neglect. . . .

"(g) [Fritz] received psychological testing results in 2004 from two agencies for [our daughter], which showed no evidence of abuse or neglect. . . .''

Moreover, Robert's sanctions motion noted Fritz was present in the courtroom during Robert's May 2006 move-away motion, although, as previously noted, Fritz was not then Catherine's attorney of record. Nonetheless, Robert argued Fritz substituted in and once again became Catherine's attorney of record shortly after that hearing, and while her counsel, Fritz "took no steps to disavow or withdraw the filings (for the move away proceeding of which he became counsel of record for all purposes) of child abuse and neglect against me which were previously refuted in the Court's Statement of Decision, attached and incorporated into the July 19, 2005 judgment."

Robert sought sanctions against Catherine and Fritz "well in excess of $250,000," which included costs for attorneys, psychological testing, court transcripts, process servers and depositions, among other items, Robert incurred to defend himself against the child abuse or neglect accusations made by Catherine and asserted by Fritz in the custody dispute involving their daughter. Robert's request for sanctions under section 3027.1 was exclusive and independent of his request for sanctions under section 271.

### 2. Sanctions Under Section 271

Robert also sought sanctions against Catherine and Fritz under section 271 because "at every turn of this drawn-out custody proceeding [Catherine] and Mr. Fritz refused to pursue settlement, refused to cooperate to keep litigation fees and costs down, obstructed relevant discovery, and served irrelevant discovery and baseless motions to compel, thus frustrating the policy to promote settlement or reasonably cooperate" as required under section 271. Robert claimed the wrongful actions of Catherine and Fritz caused his "legal fees and costs to skyrocket."

In particular, Robert, in his motion, alleged that Catherine and Fritz failed to promote settlement by refusing Robert's offers to mediate in mid-September 2003, just two weeks after Catherine filed the custody OSC, and again in March 2004. Robert also alleged Catherine and Fritz refused to discuss settlement and resolve discovery issues in August 2004.

Moreover, after Fritz substituted out of the case, Robert alleged Catherine and her then new attorney, Blatchley, in February 2005 refused to stipulate to recommendations made by a psychologist, thus forcing Robert to prepare for and try the custody dispute at tremendous expense.[7] In October 2005 Robert's counsel contacted Catherine, who was then representing herself, to

[7] Robert's sanctions motion did *not* name Blatchley, although he also represented Catherine during the course of the child custody proceedings, including at the trial.

inquire about resolving the remaining posttrial issues. According to Robert, Catherine did not respond to this request.

In addition to these allegations, Robert's motion also included several pages of discussion regarding the repeated refusal of Catherine and Fritz to comply with lawful discovery, court orders regarding such discovery, and their own irrelevant, false and unlawful discovery they served on him.

Robert requested sanctions against Catherine and Fritz under section 271 of "not less than $500,000" based on the "substantial legal fees and costs" he incurred to promote settlement and reduce litigation-related costs, as well as to compel relevant discovery. Robert thus sought a combined minimum sanction against Catherine and Fritz of $750,000.

### E. *Fritz's Motion to Quash*

Fritz alone moved to quash Robert's sanctions motion. He argued the court lacked jurisdiction over him because he was not Catherine's attorney of record when Robert filed his motion and was not a party to the action. He also argued Robert's motion was untimely under former rule 870.2 (current rule 3.1702), and section 271 applied only to a party and not a party's attorney.

Robert subsequently withdrew his request for section 271 sanctions against Fritz, but maintained Fritz was still liable for sanctions under section 3027.1. Robert argued an "action" under section 3027.1 was akin to a malicious prosecution claim in a civil matter, and thus contended a two-year statute of limitations applied. He further argued that even if the court applied a one-year limitations period based on an action for defamation, his claim against Fritz was timely.

As to Fritz's claim the action was untimely under former rule 870.2, Robert argued that a section 3027.1 sanctions action was "much more than an action to 'tally up' the attorneys fees incurred in the antecedent proceeding"; that if the court was inclined to apply former rule 870.2, the court should extend the time for filing such a motion as provided in subdivision (d) of that rule; and that because the only case on point on this issue was unpublished and held that the one-year statute of limitations for defamation should apply to a section 3027.1 sanctions motion, it would be unjust to conclude Robert's motion was untimely under former rule 870.2.

In his reply to Robert's opposition to his motion to quash, Fritz argued Catherine's September 2003 declaration did not accuse Robert of child abuse or neglect, but rather merely articulated her concerns about Robert's parenting of their daughter. Fritz also disputed that Robert had attempted to settle the custody dispute or streamline discovery, and argued Robert instead had opposed Catherine's own legitimate discovery requests and was generally uncooperative in resolving the parties' multiple disputes in the custody proceeding.

### F. The Trial Court Applies a One-year Statute of Limitations to Robert's Section 3207.1 Sanctions Motion

The trial court issued an order on December 6, 2006, concluding it had subject matter jurisdiction over Fritz, based on the plain language of section 3027.1, which as discussed below expressly applies to "a witness, a party, or a *party's attorney*." (§ 3027.1, subd. (a), italics added.) The court rejected Fritz's argument that Robert's motion was time-barred under former rule 870.2, which provides that a notice of motion to claim statutory attorney fees must be filed within the time for filing a notice of appeal under former rules 2 and 3 (ordinarily, within 60 days after the court clerk mails the party filing the notice of appeal notice of entry of judgment or after a party's service of notice of entry of judgment).[8]

The court instead concluded that former rule 870.2 was inapplicable to Robert's motion for sanctions under section 3027.1 because (1) the primary purpose of section 3027.1 is to award sanctions, not attorney fees; (2) a finding of falsity and an award under section 3027.1 need not occur during the pendency of a child custody proceeding, which, in any event, may already have been concluded by the time a party files his or her motion; and (3) section 3027.1 contains an implicit limitation of actions period independent of former rule 870.2.

The court reasoned the one-year limitations period applicable to defamation implicitly governed a section 3027.1 motion because section 3027.1 "permits a party to bring a claim for damages for false accusations and to do so within the context of a proceeding under the Family Code." Because a false accusation of child abuse is a form of slander, the court reasoned Robert's "claim for damages under section 3027.1 and for attorney's fees incurred in recovering those damages" was subject to the one-year limitations period set forth in Code of Civil Procedure section 340, subdivision (c).

The court on its own treated Fritz's motion to quash as a motion to strike and struck "any allegations of false accusations of child abuse or neglect not

---

[8] Rules 2 and 3 have been renumbered effective January 1, 2007, as rules 8.104 and 8.108, respectively.

made within a year of the filing" of Robert's July 18, 2006 order to show cause. The court also ruled that to the extent Robert's sanctions motion was premised on Catherine's September 2003 declaration in the custody OSC, it was time-barred, even if the allegations in that declaration were referred to in later hearings. The court set an evidentiary hearing for mid-January 2007 "to determine whether there is a factual basis for [Robert's] claim to money sanctions under section 3027.1. If [Robert] abandons the claim in light of the above ruling, he shall promptly notify the court."

### G. *Robert Seeks Reconsideration and Clarification of the Court's December 6, 2006 Order*

Robert filed a motion for reconsideration and clarification on December 21, 2006, raising the tolling of the statute of limitations and arguing it was inequitable of the court to apply the one-year limitations period under Code of Civil Procedure section 340, subdivision (c), in light of the lack of legal authority on this issue.

The court on June 18, 2007, denied Robert's reconsideration motion, ruling the tolling issue did not constitute "new facts, new circumstances or new law" for purposes of Code of Civil Procedure section 1008, subdivision (a). The court also concluded Robert's request to "clarify" its December 6, 2006 order was untimely.

In early July 2007, Robert filed a motion asking the court to issue a final order denying his section 3027.1 sanctions motion only as to Fritz. Robert brought this motion because it was "impossible to proceed with the motion for sanctions in light of the court's ruling that Family Code section 3027.1 has an absolute statute of limitations of one year from when the offending accusations are made and the refiling or reassertion of such accusations is not actionable." Robert noted he had "insufficient evidence to maintain an action that Fritz participated in making any false accusations that could be the subject of sanctions under Family Code section 3027.1 in the one year before the date on which [he] filed the [order to show cause] for sanctions."

On August 14, 2007, the court accepted a stipulation by Robert and Fritz dismissing Robert's section 3027.1 sanctions motion against Fritz only. Robert argued the dismissal was necessary for him to seek review of the court's December 6, 2006 order.[9]

---

[9] Fritz argues that Robert's notice of appeal is untimely because the time to appeal began running from the trial court's December 6, 2006 order, which Fritz maintains was a final appealable order. Robert filed his appeal on August 14, 2007, more than 60 days from the date of that order. However, the December 6, 2006 order was by its own terms *not* final, inasmuch as the court set an evidentiary hearing for January 18, 2007, to determine whether there was a

## DISCUSSION

### A. Standard of Review

We review the trial court's interpretation and application of section 3027.1 under a de novo standard of review. (See *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *In re Marriage of Dupre* (2005) 127 Cal.App.4th 1517, 1525 [26 Cal.Rptr.3d 328] (*Dupre*).) Determining the timing of a section 3027.1 motion is also subject to our independent review. (See *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1102–1103 [56 Cal.Rptr.3d 880, 155 P.3d 284].)

### B. Governing Law

Section 3027.1 is within part 2 of division 8 of the Family Code, which governs custody of a minor. Section 3020, subdivision (a), sets forth the Legislature's findings and declarations in connection with part 2, and provides in part: "The Legislature finds and declares that it is the public policy of this state to assure that the health, safety, and welfare of children shall be the court's primary concern in determining the best interest of children when making any orders regarding the physical or legal custody or visitation of children. The Legislature further finds and declares that the perpetration of child abuse or domestic violence in a household where a child resides is detrimental to the child."

In making a determination of the "best interest of the child," a court must consider, among other factors, the "health, safety, and welfare of the child" (§ 3011, subd. (a)), and "[a]ny history of abuse by one parent or any other person seeking custody" against "[a]ny child" and/or "[t]he other parent." (§ 3011, subd. (b)(1), (2).) "As a prerequisite to the consideration of allegations of abuse, the court may require substantial independent corroboration, including, but not limited to, written reports by law enforcement agencies, child protective services or other social welfare agencies, courts, medical facilities, or other public agencies or private nonprofit organizations providing services to victims of sexual assault or domestic violence." (§ 3011, subd. (b)(3).)

 Thus, in the context of a child custody proceeding when allegations of child abuse or neglect arise, before making a custody determination the

---

factual basis for Robert's sanctions claim against Fritz, and directed Robert to "promptly notify the court" if he abandoned his request for sanctions against Fritz. The December 6, 2006 order was interlocutory in nature and preliminary to an anticipated final order on the sanctions issue against Fritz, and thus not a final appealable order. (See *In re Marriage of Ellis* (2002) 101 Cal.App.4th 400, 403 [124 Cal.Rptr.2d 719]; *In re Marriage of Levine* (1994) 28 Cal.App.4th 585, 589 [33 Cal.Rptr.2d 559].)

court necessarily must determine the veracity of such allegations to ensure the court is acting in the "best interest" of the child. (§ 3011, subd. (b)(1)–(3).)

Section 3027.1, subdivision (a), allows a court to impose reasonable money sanctions, and any attorney fees incurred in recovering the sanctions, against a person who knowingly makes a false accusation of child abuse or neglect in a child custody proceeding. It provides: "If a court determines, based on the investigation described in Section 3027 or other evidence presented to it, that an accusation of child abuse or neglect made during a child custody proceeding is false and the person making the accusation knew it to be false at the time the accusation was made, the court *may* impose reasonable money sanctions, not to exceed all costs incurred by the party accused as a direct result of defending the accusation, and reasonable attorney's fees incurred in recovering the sanctions, against the person making the accusation. For the purposes of this section, 'person' includes a witness, a party, *or a party's attorney*."[10] (§ 3027.1, subd. (a), italics added.)

Subdivision (b) of section 3027.1 sets forth the notice required for a hearing on a section 3027.1 sanctions motion: "On motion by any person requesting sanctions under this section, the court shall issue its order to show cause why the requested sanctions should not be imposed. The order to show cause shall be served on the person against whom the sanctions are sought and a hearing thereon shall be scheduled by the court to be conducted at least 15 days after the order is served."

Finally, subdivision (c) of section 3027.1 states the "remedy provided by this section is in addition to any other remedy provided by law."

### C. *Rules of Construction*

In construing section 3027.1, "our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218]; see *Gooch v. Hendrix* (1993) 5 Cal.4th 266, 282 [19 Cal.Rptr.2d 712, 851 P.2d 1321].)

---

[10] Section 3027 governs allegations of child *sexual* abuse made during a child custody proceeding. A court is authorized to take "any reasonable, temporary steps as the court, in its discretion, deems appropriate under the circumstances to protect the child's safety until an investigation can be completed." (§ 3027, subd. (a).) To the extent allegations of child sexual abuse are made during a child custody proceeding, the court "may request that the local child welfare services agency conduct an investigation of the allegations pursuant to Section 328 of the Welfare and Institutions Code," which agency shall report its findings to the court upon its completion of the investigation. (§ 3027, subd. (b).)

"However, if the statutory language permits more than one reasonable interpretation, courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute. [Citation.] In the end, we ' "must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." ' " (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57]; see also *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1165–1166 [278 Cal.Rptr. 614, 805 P.2d 873].)

Here, section 3027.1 is silent on the timing of a motion for sanctions. Subdivision (a) of section 3027.1 provides the accusation of child abuse or neglect, to be actionable, must be "made during a child custody proceeding." (§ 3027.1, subd. (a).) Although the accusation of child abuse or neglect must be made during a child custody proceeding, there is no requirement in section 3027.1 that a motion for sanctions must be filed *during* that proceeding. (See *Dupre, supra,* 127 Cal.App.4th at p. 1527.)

Subdivision (b) of section 3027.1 also does not resolve our issue, inasmuch as it requires that a person subject to a sanctions motion be given at least 15 days' notice before the hearing. Subdivision (b) of section 3027.1 does not, however, address *when* the sanctions motion must be filed. (§ 3027.1, subd. (b).)

Robert argues the trial court erred when it applied the one-year limitations period for defamation under Code of Civil Procedure section 340, subdivision (c), and instead claims the court should have applied a presumptive deadline under equitable principles drawn from the tort of malicious prosecution, which he claims is the most analogous tort to a section 3027.1 motion. Robert thus argues the deadline to file his sanctions motion should have been two years from the judgment exonerating him of the child abuse or neglect allegations.

Robert also argues the trial court properly rejected Fritz's contention that former rule 870.2 applied to a section 3027.1 sanctions motion because former rule 870.2 was limited to claims for attorney fees. According to Robert, section 3027.1 is not so limited, inasmuch as it expressly allows recovery of "all expenses" and not just attorney fees. He further argues that borrowing the time limitations set forth in former rule 870.2 and applying them to section 3027.1 creates a "trap for the unwary," inasmuch as many litigants in family court appear in propria persona and have expenses recoverable under section 3027.1 other than attorney fees.

Because the words of section 3027.1 do not resolve the issue of the timing of a motion for sanctions under the statute, we look to extrinsic aids, including legislative history, for guidance. (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 579 [110 Cal.Rptr.2d 809, 28 P.3d 860]; *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

### D. *Legislative History of Section 3027.1*[11]

The legislative history shows section 3027.1 was originally enacted in 1990 as Civil Code former section 4611 in response to the increasing number of child custody cases where an accusation of child abuse and neglect was made "in an effort by one party to gain custody of the children." (Off. of Crim. Justice Planning, Rep. on Assem. Bill No. 3546 (1989–1990 Reg. Sess.) as amended May 16, 1990, p. 2.)[12] Civil Code former section 4611 gave a court the discretion to impose a sanction of no more than $1,000, plus reasonable attorney fees to recover that sanction, against any person who made an accusation of child abuse or neglect in a child custody proceeding if the person knew it to be false at the time it was made.

This legislative history also shows the Legislature looked to several other statutes that allowed a court to award sanctions for procedural misconduct in family law proceedings for guidance in enacting Civil Code former section 4611. (See Sen. Rules Com., Rep. on Assem. Bill No. 3546 (1989–1990 Reg. Sess.) as amended May 16, 1990, p. 1; see also Assem. Com. on Judiciary, Rep. on Assem. Bill No. 3546 (1989–1990 Reg. Sess.) as amended May 16, 1990, p. 2.) In addition to sanctions for failure to comply with the Civil Discovery Act (Code Civ. Proc., § 2023.010 et seq., formerly Code Civ. Proc., § 2023), and for the filing of bad faith actions or pursuing frivolous or delaying tactics (Code Civ. Proc., § 128.5), it shows sanctions were authorized in family law proceedings "based on the extent to which the conduct of each party and the attorney frustrates the policy of law to promote settlement

---

[11] By order dated October 28, 2008, we requested supplemental briefing from the parties analyzing the legislative history of section 3027.1 and its progeny regarding the timing of a motion for sanctions. In connection with his supplemental briefing, Robert also requested that this court take judicial notice of portions of such legislative history, which request is granted.

[12] See also Comment, *Shadows and Fog: Is California Civil Code Section 4611 an Effective Deterrent Against False Accusations of Child Abuse During Custody Proceedings?* (1993) 26 Loyola L.A. L.Rev. 881, 884, footnote 27 ("A survey conducted by the Office of Family Court Services showed a 24% increase in the number of child custody mediation cases during the past three years, with 26% of the 1700 custody disputes involving physical or sexual child abuse.").

of litigation," as provided in section 271.[13] (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 3546 (1989–1990 Reg. Sess.) as amended May 16, 1990, p. 2.)

Following its enactment, Civil Code former section 4611 became part of the Family Code and was renumbered to former section 3027 without substantive change. (1994 Family Code (Nov. 1993) 23 Cal. Law Revision Com. Rep. (1993) 1, 9, fn. 1.) In 1994 the Legislature amended former section 3027 to delete the $1,000 cap on sanctions and substituted it with a new one "not to exceed all costs incurred by the party accused as a direct result of defending the accusation." (Assem. Bill No. 2845 (1993–1994 Reg. Sess.) § 1.)

The legislative history of the 1994 amendment demonstrates the Legislature considered the $1,000 cap in former section 3027 "unreasonable given the 'enormous' cost of defending false charges of abuse or neglect. Instead of capping such sanctions at a specified amount as the current law does, this bill would authorize the award of all costs incurred to defend false accusations, together with reasonable attorney's fees for recovering those sanctions." (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business, Analysis of Sen. Bill No. 1841 (1993–1994 Reg. Sess.) Aug. 23, 1994.)[14]

By removing the $1,000 cap, the Legislature also sought to discourage further "the practice of falsely accusing another of sexual or physical abuse in custody deliberations." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading, analysis of Sen. Bill No. 1841 (1993–1994 Reg. Sess.) May 11, 1994; see also Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business, Analysis of Sen. Bill No. 1841 (1993–1994 Reg. Sess.) Aug. 23, 1994 ["[I]t is becoming common in child custody and divorce proceedings for one party to falsely accuse the other of child abuse."]; Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1841 (1993–1994 Reg. Sess.) as amended June 30, 1994 ["The author [of Assembly Bill No. 1841] hopes to curtail such allegations by providing for recovery of costs and increasing the applicable sanction."].)

[13] Section 271 continues Civil Code former section 4370.6 without substantive change, except that section 271 was broadened to apply to all proceedings under the Family Code. (Cal. Law Revision Com. com., 29C West's Ann. Fam. Code (2004 ed.) foll. § 271, p. 83.)

[14] The text of the amendment to former section 3027 originated in Senate Bill No. 1841 (1993–1994 Reg. Sess.). The Senate amended Assembly Bill No. 2845 (1993–1994 Reg. Sess.) in August 1994 by deleting the entire text of that bill and replacing it with the text of Senate Bill No. 1841. (Concurrence in Sen. Amends., Assem. Bill No. 2845 (1993–1994 Reg. Sess.) as amended Aug. 26, 1994, p. 1; see also Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2845 (1993–1994 Reg. Sess.) Aug. 26, 1994.)

In 2000 the Legislature amended section 3027 and renumbered it as (current) section 3027.1. (Stats. 2000, ch. 926, § 2.) It also added a new Family Code section, section 3027, which, as already noted, applies to accusations of child sexual abuse. (Stats. 2000, ch. 926, § 3.)

The legislative history does not answer the question of the timing of a motion for monetary sanctions under section 3027.1. It does highlight, however, the public policy underlying the enactment of this statute of discouraging a person from deliberately making false accusations of child abuse or neglect during a child custody proceeding in order to gain custody of a minor child, and of compensating a party wrongly accused of abuse or neglect up to the statutory maximum.

■ The legislative history also shows the Legislature looked to other sanctions statutes applicable in family law proceedings, including (what is now) section 271, for guidance during its enactment of Civil Code former section 4611, the predecessor of Family Code section 3027.1. In construing a statute, we also examine the context in which the statute appears, " 'adopting the construction that best harmonizes the statute internally and with related statutes.' " (*Pacific Sunwear of California, Inc. v. Olaes Enterprises, Inc.* (2008) 167 Cal.App.4th 466, 474 [84 Cal.Rptr.3d 182].) We next turn to an analysis of section 271, and the timing in which to seek sanctions under that statute.

### E. *Sanctions Under Family Code Section 271*

As noted, Robert also moved under section 271 for monetary sanctions in excess of $500,000 against Catherine and Fritz for the "substantial legal fees and costs" he incurred, which request was separate and independent of his sanctions request under section 3027.1. Robert subsequently dismissed Fritz only from his request for sanctions under section 271.[15]

Section 271 provides:

"(a) Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. *An award of*

---

[15] Robert's dismissal of Fritz from his request for sanctions under section 271 is not a subject of this appeal.

*attorney's fees and costs pursuant to this section is in the nature of a sanction.* In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award.

"(b) An award of attorney's fees and costs as a sanction pursuant to this section shall be imposed only after notice to the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard.

"(c) An award of attorney's fees and costs as a sanction pursuant to this section is payable only from the property or income of the party against whom the sanction is imposed, except that the award may be against the sanctioned party's share of the community property." (§ 271, italics added.)

■ Section 271 authorizes a fees and costs award as a penalty for obstreperous conduct. (*In re Marriage of Norton* (1988) 206 Cal.App.3d 53, 57–58 [253 Cal.Rptr. 354].) However, "[w]hile fees and costs imposed under [section 271] are in the nature of a sanction, the requisite delicts are limited. The statute is aimed at conduct that further or frustrates settlement of family law litigation and at reduction of litigation cost." (*In re Marriage of Freeman* (2005) 132 Cal.App.4th 1, 6 [33 Cal.Rptr.3d 237] (*Freeman*).) A trial court has broad discretion to award sanctions under section 271, subject to the "unreasonable financial burden" cap in subdivision (a) of that statute. (§ 271, subd. (a); see *In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1478 [64 Cal.Rptr.3d 29] (*Feldman*) [the imposition of sanctions under § 271 will be reversed for abuse of discretion " ' " 'only if, considering all of the evidence viewed most favorably in support of its order, no judge could reasonably make the order' " ' "].)

Section 271 "contemplates that sanctions be assessed at the end of the lawsuit, 'when the extent and severity of the party's bad conduct can be judged.' " (*Freeman, supra*, 132 Cal.App.4th at p. 6, quoting *In re Marriage of Quay* (1993) 18 Cal.App.4th 961, 970 [22 Cal.Rptr.2d 537].) In *Freeman*, the court concluded a party, seeking sanctions in the form of attorney fees and costs under section 271 against another for the latter's frivolous appeal, was required to file an application within the time limitation set forth in former rule 870.2(c), or within 40 days after the clerk sent notice of issuance of the remittitur. (*Freeman, supra*, 132 Cal.App.4th at p. 9.)

Subsequently, this court concluded in *Feldman, supra,* 153 Cal.App.4th at pages 1494–1495, that a court may award sanctions under section 271 before the end of a lawsuit, observing the "text of section 271 contains no requirement that the trial court impose the sanction at the end of the lawsuit. Indeed, the only procedural requirement in the statute is that an award of attorney fees and costs as a sanction may be imposed 'only after notice to the party . . . and [an] opportunity for that party to be heard.' " (153 Cal.App.4th at p. 1495.) We further concluded, "[a]s a matter of logic, to promote cooperation a trial court must be able to apply sanctions *during the course of the litigation* when the uncooperative conduct arises in order to encourage better behavior as the litigation progresses." (*Ibid.*)

### F. *Laches*

■ Robert argues that because there is no statute or rule setting a deadline when a party must file a section 3027.1 motion for monetary sanctions, the deadline is prescribed by equitable principles based on laches. We agree. (See *Fountain Valley Regional Hospital & Medical Center v. Bonta´* (1999) 75 Cal.App.4th 316, 324 [89 Cal.Rptr.2d 139].)

■ Laches is " 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.' " (*Wood v. Elling Corp.* (1977) 20 Cal.3d 353, 362 [142 Cal.Rptr. 696, 572 P.2d 755]; see also *Magic Kitchen LLC v. Good Things Internat., Ltd.* (2007) 153 Cal.App.4th 1144, 1156 [63 Cal.Rptr.3d 713] [Laches "is an equitable time limitation on a party's right to bring suit, resting on the maxim that 'equity aids the vigilant, not those who sleep on their rights.' [Citations.]"].)

"These policies also guard against other injuries caused by a change of position during a delay. While a statute of limitations bars proceedings without proof of prejudice, laches 'requires proof of delay which results in prejudice or change of position.' " (*Lam v. Bureau of Security & Investigative Services* (1995) 34 Cal.App.4th 29, 36 [40 Cal.Rptr.2d 137] (*Lam*), quoting *Brown v. State Personnel Bd.* (1985) 166 Cal.App.3d 1151, 1161 [213 Cal.Rptr. 53] (*Brown*).) "Delay alone ordinarily does not constitute laches, as

lapse of time is separately embodied in statutes of limitation." (*Lam*, at p. 36.) "What makes the delay unreasonable in the case of laches is that it results in prejudice." (*Ibid.*)

■ "There is one circumstance in which unreasonable delay may be found as a matter of law. 'In cases in which no statute of limitations directly applies but there is a statute of limitations governing an analogous action at law, the period may be borrowed as a measure of the outer limit or reasonable delay in determining laches. [Citations.] Whether or not such a borrowing should occur depends upon the strength of the analogy.' " (*Lam, supra*, 34 Cal.App.4th at p. 37, quoting *Brown, supra*, 166 Cal.App.3d at pp. 1159–1160.) "The effect of the violation of the analogous statute of limitations is to shift the burden of proof to the plaintiff to establish that the delay was excusable and the defendant was not prejudiced thereby." (*Lam*, at p. 37.) If, however, the two actions are not analogous, the burden does not shift and it remains the responsibility of the party asserting laches to show that the delay was unreasonable and caused the party prejudice. (*Id.* at pp. 38–39.)

In *Brown* the plaintiff argued his dismissal in 1981 based on incidents of sexual harassment in 1975 was barred by laches, analogizing to a provision in the Government Code that mandated disciplinary action be brought against a civil service employee within three years after the reason for the discipline arose. (*Brown, supra*, 166 Cal.App.3d at p. 1157.) The court agreed, observing that while the Government Code provision did not govern that case "*as* a statute of limitations," it did reflect a "legislative policy judgment that a delay of three years is inherently unreasonable in the prosecution of a disciplinary action against a broad range of public employees," including employees "whose positions mirror" those of the plaintiff. (*Id.* at p. 1160.) The *Brown* court thus "borrowed" the Government Code provision and concluded it provided an "outer limit of delay which is reasonable in the prosecution of a disciplinary action against an employee of the state university system." (*Ibid.*)

G. *Analysis*

■ We conclude a party seeking sanctions under section 3027.1 should file his or her motion within the time provided in rule 3.1702.[16] Under that rule, the motion for sanctions should be filed within the time provided in rule

---

[16] We do not decide in this appeal whether Robert could have filed his motion *before* the conclusion of the child custody proceeding. We note, however, that like section 271 (*Feldman, supra*, 153 Cal.App.4th at p. 1495), section 3027.1 does not appear to require a party to wait until the end of that proceeding to file his or her sanctions motion.

8.104 or, if applicable, rule 8.108, or *the earliest of* 60 days after the superior court clerk mails, or a party serves, notice of judgment or a file-stamped copy of the judgment (or an order) exonerating the party of child abuse or neglect allegations, or 180 days after entry of judgment (or the issuance of an order) where the party is exonerated from such allegations.

We further conclude that if a party files his or her request for section 3027.1 sanctions after the presumptive deadlines set forth in rules 3.1702, 8.104 and, if applicable, rule 8.108, the burden shifts to the movant to show that his or her delay was excused and that such delay did not result in undue prejudice to the opposing party or person who is the subject of the sanctions motion.

Our conclusion is based in part on the Legislature's findings and declaration that the public policy of ensuring the health, safety and welfare of children shall be the "primary concern" of courts in determining the best interest of children in child custody proceedings, and that an allegation of child abuse asserted by one parent against another has a significant impact on the court's determination of custody. (§ 3020.)

In addition, our conclusion promotes consistency within the Family Code, inasmuch as the court in *Freeman* held a party seeking sanctions under section 271 against another for the latter's frivolous appeal was required to file an application within the time limitation set forth in former rule 870.2(c), or within 40 days after the clerk sent notice of issuance of the remittitur. (*Freeman, supra,* 132 Cal.App.4th at p. 9.)

A section 3027.1 sanctions motion filed within the time period prescribed by rules 3.1702 and 8.104 is also more likely to be heard by the same judge who presided over the child custody proceeding. As such, this also will promote consistency and fairness in the courts' treatment of sanctions awards under section 3027.1.

Robert argues former rule 870.2 is inapplicable "because section 3027.1 expressly provides for recovery of 'all expenses,' not just attorney fees." Because former rule 870.2 (current rule 3.1702) governs the timing of a claim for attorney fees only, Robert argues these rules do "not apply to a statute that provides for recovery of attorney fees *and* additional expenses." Robert also distinguishes section 271 from section 3027.1 on this basis, arguing section 271 provides for an award of "attorney fees and costs," whereas section 3027.1 "provides for 'sanctions' capped by 'all costs incurred by the party accused as a direct result of defending the accusation.' "

Robert's argument ignores the plain language in section 271, subdivision (a), that "[a]n award of attorney's fees and costs pursuant to this section is in the *nature of a sanction.*" (Italics added; see also § 271, subd. (b) ["An award of attorney's fees and costs as a *sanction* pursuant to this section shall be imposed only after notice to the party against whom the *sanction* is proposed . . . ." (italics added)]; *id.*, subd. (c) ["An award of attorney's fees and costs as a *sanction* pursuant to this section is payable only from the property or income of the party against whom the *sanction* is imposed . . . ." (italics added)].)

In addition, the legislative history of section 3027.1 shows the Legislature looked to section 271 (then Civ. Code, § 4370.6) when authorizing a court to award sanctions based on procedural misconduct. (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 3546 (1989–1990 Reg. Sess.) as amended May 16, 1990, p. 2.)

We thus reject Robert's contention that section 271 is sufficiently distinguishable from section 3027.1 such that the former statute is governed by the time limitation in rule 3.1702 (or former rule 870.2) (*Freeman, supra*, 132 Cal.App.4th at p. 9), whereas the latter statute should be governed by a different rule, which according to Robert is a two-year limitations period based on equitable principles derived from the tort of malicious prosecution. In fact, sections 271 and 3027.1 have more in common than they have differences, as both statutes provide for an award of sanctions; both give a court broad discretion to make such an award; both address procedural misconduct in family law proceedings; and both allow a party to recover attorney fees and costs as sanctions.

Robert's own sanctions motion supports this analysis. It would make little sense to require a party to file a motion for sanctions under section 271 within the time limitation prescribed by rule 3.1702, for example, while at the same time giving that party two years from the date the party is exonerated from child abuse or neglect allegations to seek sanctions under section 3027.1. This is particularly true when both statutes allow for the recovery of attorney fees and costs in family law proceedings, which Robert sought in his motion.[17]

We also reject Robert's argument that a two-year limitations period should apply based on the tort of malicious prosecution. Allowing a party in a child

---

[17] Indeed, under section 3027.1 Robert sought attorney fees and costs against Catherine and Fritz in excess of $250,000. In his same motion, Robert also moved under section 271 for attorney fees and costs in excess of $500,000, initially against Catherine and Fritz, and later against Catherine only. The record does not include a breakdown of the attorney fees and costs Robert is seeking under sections 271 and 3027.1, although undoubtedly the lion's share of the sanctions are for reimbursement of attorney fees Robert expended.

custody dispute to wait two years to seek sanctions against a person under section 3027.1 is decidedly not in the best interest of a child (§ 3020), as it discourages, as opposed to encourages, finality in child custody litigation, in contravention of public policy. (See, e.g., *Lehman v. Lycoming County Children's Services* (1982) 458 U.S. 502, 513 [73 L.Ed.2d 928, 102 S.Ct. 3231] ["[t]he State's interest in finality is unusually strong in child-custody disputes"]; *Adoption of Alexander S.* (1988) 44 Cal.3d 857, 868 [245 Cal.Rptr. 1, 750 P.2d 778] [state's interest in finality in child custody disputes is "unusually strong" in view of the importance of a stable child-parent relationship]; *In re Clarissa H.* (2003) 105 Cal.App.4th 120, 125 [129 Cal.Rptr.2d 223] ["the public policy of expediency and finality is unusually strong in custody . . . matters, as uncertainty is detrimental to a child's development and well-being"].)

In addition, we disagree with Robert that section 3027.1 "redresses the same injury that is at the core of a civil action for malicious prosecution." Section 3027.1 does not create a right to "damages," as Robert argues. Instead, this statute provides a *limited* exception to the absolute litigation privilege in Civil Code section 47, subdivision (b)(2), which is further limited by the family law court's *discretion* to sanction a person for making knowingly false accusations of child abuse or neglect in a child custody proceeding.

By analogizing the discretionary authority of a court to award sanctions under section 3027.1 to the right to recover damages in the tort of malicious prosecution, Robert opens the door to the potential abuse of this statute by parties in child custody and other family law proceedings that courts closed when they barred malicious prosecution in such proceedings. (See *Begier v. Strom* (1996) 46 Cal.App.4th 877, 885–888 [54 Cal.Rptr.2d 158] [ex-husband cannot maintain malicious prosecution against ex-wife based on her filing of false police report accusing ex-husband of molesting their daughter]; *Bidna v. Rosen* (1993) 19 Cal.App.4th 27, 30 [23 Cal.Rptr.2d 251] (*Bidna*) [husband may not maintain action for malicious prosecution against wife for her filing of multiple child custody proceedings, inasmuch as the "remedy for egregious conduct in family law court is for the family law bench to nip it in the bud with appropriate sanctions, not to expand tort liability for malicious prosecution to the family law bar"].) Courts adopted a "bright line rule" barring malicious prosecution claims in family law cases because such "cases have a unique propensity for bitterness" (*Bidna, supra,* 19 Cal.App.4th at p. 35) and because family law courts have the "ability to swiftly discourage litigious nonsense *at its source*" by imposing sanctions within the family law proceeding. (*Ibid.,* citing § 271 among other statutes.)

We thus reject Robert's argument the Legislature intended to leave litigants, witnesses and attorneys exposed to potential sanctions under section 3027.1 for two full years after a party has been exonerated from child abuse or neglect allegations.

We also reject applying the one-year limitations period in Code of Civil Procedure section 340, subdivision (c), to a request for sanctions under Family Code section 3027.1. The trial court here reasoned the one-year statute of limitations for defamation implicitly governs a section 3027.1 motion because section 3027.1 "permits a party to bring a claim for damages for false accusations and to do so within the context of a proceeding under the Family Code." Because a false accusation of child abuse is a form of slander, the trial court reasoned Robert's "claim for damages under Section 3027.1 and for attorney's fees incurred in recovering those damages" was subject to Code of Civil Procedure section 340, subdivision (c).

"[A] cause of action for defamation accrues at the time the defamatory statement is 'published' (using term 'published' in its technical sense)." (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1247 [7 Cal.Rptr.3d 576, 80 P.3d 676].) "[I]n defamation actions the general rule is that publication occurs when the defendant communicates the defamatory statement to a person other than the person being defamed." (*Ibid.*)

In the case before us, Robert's claim he was wrongly accused of child abuse or neglect of his daughter dates back to Catherine's September 4, 2003 declaration in support of her custody OSC. If we applied defamation principles to section 3027.1 as did the trial court, Robert would have been required to file his request for sanctions under 3027.1 within one year, or by September 4, 2004, at the latest.

The record shows, however, that the court-ordered psychological evaluation of the parties was not completed until January 2005. The record further shows the trial court extensively relied on the findings in this report and the testimony of the doctor who prepared it in determining the best interest of the parties' daughter, and in granting Robert sole legal custody of her at the conclusion of the child custody trial held in May 2005.

We decline to adopt a rule that would have required Robert to seek sanctions under section 3027.1 before the trial court's determination of custody and visitation based on the best interest of their daughter, which would have interrupted and thus prolonged the child custody proceeding. Such a rule would make little sense in light of the Legislature's requirement that a court consider, among other factors, "[a]ny history of abuse by one

parent or any other person seeking custody" against "[a]ny child" or "[t]he other parent" in determining the best interest of the child. (§ 3011, subd. (b)(1), (2).)

We also reject Robert's contention that by borrowing rules 3.1702 and 8.104 and applying them to a section 3027.1 request for sanctions, we are creating a "trap for the unwary" because many litigants in family court appear in propria persona and will not be seeking attorney fees, but instead only costs for the procedural misconduct circumscribed by that statute.

However, the record here does not support this contention, and in fact supports the opposite view, inasmuch as Robert filed his sanctions motion in propria persona while seeking costs and attorney fees in excess of $750,000. His contention also ignores the edict that propria persona litigants are held to the same standard as parties represented by trained legal counsel. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985 [35 Cal.Rptr.2d 669, 884 P.2d 126].)

In addition, by applying the same standards governing a motion for attorney fees and costs under section 271 to the timing of a motion under section 3027.1, we are making it less, not more, confusing for parties, their attorneys and family law courts by requiring parties' posttrial motions to be brought within the same period, and increasing the likelihood the same trial judge that presided over the child custody proceeding will also decide such motions.

## H. *Remand*

As noted, we conclude Robert was required to file his section 3027.1 sanctions motion within the time prescribed by former rule 870.2, or the earliest of 60 days from the date the superior court clerk mailed, or a party served, the notice of entry of judgment exonerating him from allegations of child abuse or neglect against his daughter. However, because this is an issue of first impression in our state, we further conclude it would be unfair to apply this procedural rule retroactively to Robert. (See, e.g., *Douglas v. Ostermeier* (1991) 1 Cal.App.4th 729, 741–742 [2 Cal.Rptr.2d 594].)

We therefore reverse the trial court's order dismissing Robert's section 3027.1 sanctions motion against Fritz, and remand for the trial court to consider that motion on its merits.

## DISPOSITION

The order of the trial court dismissing Robert's motion for section 3027.1 sanctions is reversed, and the case remanded for the trial court to hear that motion on its merits. Each side shall bear its own costs on appeal.

Huffman, J., and Nares, J., concurred.