Filed 7/6/23  Marriage of Perkal CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re the Marriage of DAVID and MONICA PERKAL. | B319411 |
| DAVID PERKAL, Respondent, v. MONICA PERKAL, Appellant. | Los Angeles County Super. Ct. No. BD630924 |

APPEAL from an order of the Superior Court of Los Angeles County, Bruce G. Iwasaki, Judge. Affirmed.

Fernandez & Karney, Mark H. Karney; Law Offices of Ben Gharagozli and Ben Gharagozli for Appellant.

Law Office of Stephanie J. Finelli and Stephanie J. Finelli for Respondent.

## INTRODUCTION

Monica Perkal[1] appeals from the February 10, 2022 order denying in part her request for orders (RFOs). Specifically, she challenges the trial court's denial of her request for: (1) gains, losses, or interest earned on $168,000 that allegedly became her separate property in March 2018 or January 2019; (2) attorney's fees under Family Code[2] section 6344; and (3) monetary sanctions against David under section 271 due to his litigation conduct. We conclude that Monica has forfeited her claims by failing to provide this court with any of the exhibits admitted in evidence or refused during the two-day hearing on her RFOs. We also conclude that she failed to affirmatively establish prejudicial error. We therefore affirm the order.

## FACTS AND PROCEDURAL BACKGROUND

Although the appellate record presented by Monica is incomplete, it is voluminous. The facts and procedural background necessary to our opinion, however, are straightforward.

### 1. Background

Monica and David married in 2000 and have two children, Nikolas and Natasha. Nikolas was born in 2003; Natasha was born in 2006. In 2015, David filed a petition for dissolution of

---

[1] Monica Perkal's former name, Monica Moynihan, was restored after the parties' judgment of dissolution and termination of marital status was entered in 2019. The parties, however, refer to her as Monica Perkal in their appellate briefs. For clarity, we refer to the parties by their first names. No disrespect is intended.

[2] All undesignated statutory references are to the Family Code.

marriage. Since then, the matter has been heavily litigated at almost every juncture.

On May 6, 2016, Monica requested and obtained a domestic violence temporary restraining order (TRO) against David. At the time, she was represented by counsel from Feinberg Mindel Brandt & Klein (FMBK). The TRO was reissued and the hearing on her request for a restraining order was continued to July 1, 2016. David filed his own request for a TRO against Monica on June 22, 2016. His request was opposed by FMBK on Monica's behalf. The court denied David's TRO request until the continued hearing on Monica's request was conducted.

Meanwhile, on May 19, 2016, Monica filed RFOs for child support, spousal support, accounting fees, and attorney's fees of no less than $75,000 payable to FMBK. The RFOs, also filed by FMBK on Monica's behalf, stated that the request for attorney's fees was based in part on Monica having been "forced to seek domestic violence restraining orders against [David] in May 2016." In June 2016, however, the parties entered into a written stipulation taking the RFOs off calendar and agreeing to resolve all outstanding issues at a voluntary settlement conference with a retired judge. Per the stipulation, the parties also agreed to distribute $35,000 to FMBK from proceeds from the sale of the family home.

On July 1, 2016, the court granted Monica's request for a three-year restraining order and denied David's request for a restraining order. Although both parties were represented by counsel at the hearing, the court did not award attorney's fees.

On October 11, 2016, Monica, through her counsel at FMBK, filed an order to show cause for contempt (OSC) based on David's purported violations of the July 1, 2016 restraining order.

The OSC alleged David violated the order by sending Monica two emails regarding financial matters and by showing up at one of the children's dental appointments. The OSC was scheduled for hearing on November 23, 2016, and sought an award of attorney's fees. There is no indication in the record that David was ever held in contempt, and the November 23, 2016 minute order is not in the record.

On February 6, 2017, the parties filed a judgment resolving issues regarding child custody, and Monica represented that attorneys from FMBK were involved in the negotiations and preparation of that judgment. A day later, FMBK substituted out of the case and Monica agreed to represent herself in the litigation. In May 2018, FMBK filed a notice of lien in the amount of $48,101.90 for outstanding fees.

On August 1, 2017, David's employee benefit plan, Motion Picture Retirement, was joined as a party to the proceedings.

In October 2017, Monica, though her newly obtained attorney (William W. Oxley), filed RFOs for financial support and for $71,179 in attorney's fees and costs. On December 7, 2017, the court ordered David to provide Monica with $30,000 as "an uncharacterized sum."

The parties reached a settlement of reserved issues on March 21, 2018 (Settlement Agreement) with the assistance of a private mediator. The Settlement Agreement was incorporated into a judgment entered on January 19, 2019 (2019 Judgment).

The Settlement Agreement provides for the division of the parties' assets including, as relevant here, two of David's retirement accounts. Specifically, paragraph 1.C states that the "community portion" of his "Motion Picture Industry Pension Plan (accrued benefits) xx4739 [MPI plan]" "shall be equally

4

divided per QDRO[3] by the time rule/*Brown* by Louise Nixon. The fees and costs for Ms. Nixon shall be equally divided by the Parties. [David's] separate property shall be confirmed to him." Paragraph 1.D, titled "Dave's Motion Picture IAP Plan (defined contribution) xx4739 [IAP plan]," states that "[f]rom said account, upon execution of the Judgment the sum of $168,000 shall be rolled over into an account to be designated by Monica. The amount rolled over shall be deemed to include Monica's share of the community property portion of the IAP plan, as well as an equalization payment to Monica to satisfy any and all reimbursement claims and any other claims pertaining to property division and arrears. All remaining funds in the account shall be awarded and/or confirmed to Dav[id] as his sole and separate property."

The Settlement Agreement also provides for the sale of certain motion picture camera lenses with the net proceeds to be divided equally between Monica and David[4]. If the parties "are unable to agree upon a third party broker to list" the lenses for sale, the private mediator "shall select the broker as a binding arbitrator." The private mediator was also to resolve any dispute

[3] "Under provisions of the federal Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001 et seq.; hereafter ERISA), private retirement plans may, pursuant to a state court's domestic relations order, pay a portion of an employee participant's retirement benefits directly to the employee's former spouse or dependents, if and only if the state court order meets certain specifications. Such an order is a 'qualified domestic relations order' (hereafter a QDRO). (29 U.S.C. § 1056(d)(3).)" (*In re Marriage of Oddino* (1997) 16 Cal.4th 67, 71.)

[4] David is a cinematographer in the motion picture industry.

regarding the sale, acceptance of offers, David's right of first refusal, and the division of the proceeds from the sale.

In addition, the Settlement Agreement provides for the payment of the parties' attorney's fees and costs. David's attorney and Monica's attorney (William Oxley) would each receive one-half of the proceeds from an account held at First Republic Bank. Aside from the distributions from this account, each party "shall pay his/her own attorneys' fees … through the entry of Judgment." Nevertheless, each party reserves his or her "rights, claims, and defenses with respect to attorneys' fees and sanctions" for "the pending domestic violence restraining order actions, the pending appeal, and the fees and costs and sanctions incurred after April 1, 2018 for the pending RFO for child and spousal support."

On April 26, 2018, Nikolas, as a self-represented party, obtained a one-year restraining order against David. On August 7, 2019, Nikolas, represented by attorney John Glantz, obtained another restraining order against David and he was ordered to pay Glantz $10,000 in fees and costs by September 24, 2019.

On October 9, 2019, Monica obtained an order renewing her restraining order against David. She was represented by Glantz in that proceeding. The following month, the court awarded Monica $8,500 in fees in connection with the renewal request and ordered David to pay those fees directly to Glantz within 60 days.

On March 18, 2021, the court ordered Monica to pay David $20,000 in sanctions under section 271 in connection with a request for spousal and child support. The court found that Monica "engaged in litigation tactics that made the case more expensive, that [Monica] did not participate in the process, and

that [Monica] made certain filings requiring [David] to respond which were not pursued by [Monica]."

## 2.      Monica's March 29, 2021 RFOs (March 2021 RFOs)

On March 29, 2021, Monica filed RFOs regarding the following: $448,000 for the "converted community property" camera lenses and as "reimbursement" owed by David for income derived from the lenses, plus $80,946.63 in attorney's fees under sections 271, 290, 2030-2032, and/or Code of Civil Procedure section 128.5; the "Stipulated QDRO" or, alternatively, $168,000 to be paid to Monica from David's retirement account, plus $48,702.08 in fees and "interest in the amount of $47,687.08 ($446.03 per diem for 1036 days)"; child and spousal support arrears; unreimbursed medical expenses for Nikolas's surgery; $46,317 in attorney's fees regarding "the restraining order(s) obtained in this case" and to defend against David's dismissed restraining order under section 6344; $87,598.44 in fees under sections 2030-2032 for dismissed appeals and RFOs for support; and $10,000 in sanctions regarding "the non-compliance of signing the QDRO that was stipulated to on March 21, 2018."

David opposed the RFOs. He argued, among other things, that Monica failed to contact Louise Nixon to prepare a QDRO and Monica was not entitled to interest for the amount to be disbursed to her from his retirement account.

## 3.      Scheduling Conferences

The hearing on Monica's March 2021 RFOs was scheduled for November 4, 2021. On that date, however, the court stated that Monica had not complied with a prior order which required her to pay David $10,408.40 for child support overpaid by him. Under the disentitlement doctrine, the court refused to proceed

7

with the hearing on Monica's pending RFOs until she complied with the court's prior order. The court took the March 2021 RFOs off calendar but invited the parties to contact the court to reschedule the hearing after Monica paid David the amount owed by her. Although there were grounds to sanction Monica again, the court declined to do so and noted it had concerns about the behavior and litigation conduct of both parties.[5]

On December 21, 2021, after confirming that Monica had paid David the amount previously ordered, the court rescheduled the hearing for February 9 and 10, 2022.

### 4.    Monica's Trial Brief

Monica filed a trial brief on February 8, 2022. She contended the court would have to resolve issues regarding the QDRO, child support, lenses, reimbursements (medical expenses for minor child), attorney's fees and costs, and sanctions. Relevant here, Monica argued that David refused to sign the QDRO, $168,000 and the community portion from the MPI pension were Monica's sole and separate property as of the date the Settlement Agreement was signed, and she was entitled to interest on the $168,000 in the amount of $68,216.46. Regarding attorney's fees, Monica sought a total of $200,000, including $50,000 for fees incurred by her under section 6344. Finally, Monica sought an award of section 271 sanctions against David in an unspecified amount "for his conduct regarding the lenses, QDRO and meritless appeals."

---

[5] Two weeks later, a different judicial officer denied Monica's request to declare David a vexatious litigant.

**5.    The February 2022 Evidentiary Hearing**

In February 2022, the court conducted a two-day evidentiary hearing to address Monica's March 2021 RFOs. Monica, David, and Wayne Loucks testified. Monica was represented by counsel. David was self-represented. Loucks was hired by Monica to provide a market value estimate of five camera lenses and testified they were worth between $85,000 and $92,000.

Numerous exhibits were marked and admitted in evidence during the hearing. Based on the reporter's transcript, some of those exhibits addressed issues raised by Monica in this appeal. For example, Exhibit 3, pages 15-16, were emails between David and QDRO counsel. And, according to David, Exhibit 3, pages 17-18, show he is "pleading with [Monica] and [her] counsel to contact Miss Nixon's firm within five days, by July 26th, and engage them in creating a QDRO as per the court order on January 18, 2019." Further, Exhibit 27, an email with the subject heading "Language Approved for QDRO (Perkal)," was used by David during the hearing to challenge Monica's attempt to include language regarding gains and losses in a QDRO. As for any delay in dividing the camera lenses, exhibit 5 contains 56 pages relating to attempts by David "to confer about the lens selection" process.

Monica's attorney also marked but never requested admission of certain exhibits supporting her claim for attorney's fees. By way of example, Exhibit X appeared to be 30 pages of bills from FMBK, some of which related to Monica's request for fees under section 6344. Exhibit Y included bills from FMBK and William Oxley. Exhibit X or Y contained a hand-written notation

of $27,764 but Monica did not know who made the notation on the invoices.

During David's examination, Monica's attorney marked Exhibit VV for identification and sought its admission in evidence. According to counsel, Exhibit VV would allow the court to make a ruling regarding section 6344 fees incurred by Monica. David objected to the admission of the exhibit for lack of foundation and the court sustained the objection. In response to the court's evidentiary ruling, Monica's counsel stated he would revisit the issue once Monica was back on the stand but he never did.

## 6. February 10, 2022 Order and Findings; the Appeal

After the matter was submitted on February 10, 2022, the court issued an oral ruling on Monica's March 2021 RFOs. Later that day, the court issued a four-page written order with an attached dissomaster report. Neither party requested a statement of decision.

Based on the language in paragraph 1.D of the Settlement Agreement, the court found that, unlike the MPI plan, the parties did not agree to divide David's IAP plan by a QDRO. "The IAP defined contribution plan was simply a source of funds to pay Monica a negotiated amount" and included, "in unknown amounts, equalization payments and reimbursements to Monica." The court denied Monica's request for gains or interest as of the date the Settlement Agreement or the 2019 Judgment was signed because, among other things, Monica never designated an account to receive the $168,000 from David's IAP plan. Nevertheless, within five days after Monica designates such an account in writing, the court ordered David to execute all necessary documents for effectuating the rollover of $168,000 into

the designated account. The court also awarded Monica interest at the legal rate on the $168,000 beginning on the fifteenth day after she designates the account.

As for David's MPI plan, the court ordered both parties to comply with the Settlement Agreement by paying and cooperating with QDRO counsel for preparation of a QDRO. The court found that both parties were to blame for delaying resolution of the QDRO issue: "At times, Dave was unreasonably recalcitrant. At times, it appears that Monica or her counsel was unresponsive."

Although it found that Monica was a prevailing party because she had obtained and extended a domestic violence restraining order against David, it denied her request for attorney's fees under section 6344. The court explained that "Monica failed to provide information about the attorney's experience, what work was done, and why the fees were necessary and reasonable." "The bills she sought to introduce are raw invoices uncharacterized by subject area, and include work for other aspects of this dissolution matter." The court also denied Monica's request for sanctions under section 271, finding that she "similarly offered no basis to impose sanctions against David."[6]

Monica appeals from the February 10, 2022 order.

---

[6] To be sure, the court found that David was to blame for the delay in dividing the camera lenses. It rejected, however, Monica's claim that David delayed the process because he was using or renting the lenses for his own benefit: "No admissible evidence of David's use or rental of the lenses was introduced."

## DISCUSSION

Monica argues the clear intention of the parties was for the $168,000 from the IAP plan to be paid "immediately"—i.e., in March 2018—or no later than when the 2019 Judgment was entered.[7] Thus, contrary to the court's order, she was entitled to the gains and losses in the IAP plan as of 2018 or 2019 even if the $168,000 was an equalization payment. Monica also argues she was not required to identify an account to receive those proceeds "until MPI was served with a QDRO." In her view, the Settlement Agreement's language requiring her to designate an account as a condition precedent to receiving the funds was "drafted incorrectly." Monica also argues the court erred in not awarding her attorney's fees under section 6344 because she was a prevailing party and submitted detailed billing records from her attorneys.[8] Finally, Monica contends the court erred in not awarding section 271 sanctions based on David's delay in engaging QDRO counsel and in selling or dividing the camera lenses.

### 1.    The incomplete record is fatal to Monica's appeal.

It is well-settled that "[a]ppealed judgments and orders are presumed correct, and error must be affirmatively shown." (*Hernandez v. California Hospital Medical Center* (2000) 78

---

[7] On page 13 of her opening brief, Monica also suggests that one of the errors made by the court concerned her entitlement to the gains and losses of her "share of funds left in Dave's MPI plan for the past four years." The challenged order, however, expressly states that the "community portion plus all gain and losses" from the MPI plan will be determined as of March 21, 2018 and shall be divided equally.

Cal.App.4th 498, 502, citing *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) As the party challenging the court's presumably correct findings and rulings, Monica is required "to provide an adequate record to assess error." (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.) "Failure to provide an adequate record on an issue requires that the issue be resolved against appellant." (*Barak v. The Quisenberry Law Firm* (2006) 135 Cal.App.4th 654, 660.)

A party who contends that a particular finding is not supported by substantial evidence is obligated to set forth in his or her brief *all* the material evidence on the point, not merely the party's own evidence. (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1657–1659.) Facts must be presented in the light most favorable to the judgment (*id.* at pp. 1657–1658), and the burden on appellant to provide a fair summary of the evidence " ' "grows with the complexity of the record. [Citation.]" ' " (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 739; see Cal. Rules of Court, rule 8.204(a)(1)(C)[9] [briefs must support any reference to a matter in the record with a citation to the record]; rule 8.204(a)(2)(C) [appellant's opening brief must "[p]rovide a summary of the significant facts limited to matters in the record"].) The appellant forfeits or waives a claim of lack of substantial evidence to support a finding by failing to

---

[8] Monica does not state the amount of attorney's fees sought by her for work done by her counsel in obtaining restraining orders. Instead, she notes that the billing statements attached to the March 2021 RFOs provided that information. Those attachments, however, were not admitted in evidence and the court declined to consider them.

[9] All further rule citations are to the California Rules of Court.

set forth, discuss and analyze all the evidence on that point. (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [error is deemed to be waived]; *Myers,* at p. 749 [same].)

Finally, an appellant has the burden not only to show error but prejudice from that error. (Cal. Const., art. VI, § 13.) If an appellant fails to satisfy that burden, his or her argument will be rejected on appeal. (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963.) "[W]e cannot presume prejudice and will not reverse the judgment in the absence of an affirmative showing there was a miscarriage of justice. [Citations.] Nor will this court act as counsel for appellant by furnishing a legal argument as to how the trial court's ruling was prejudicial. [Citations.]" (*Ibid.*)

In this appeal, Monica elected to proceed by appendix pursuant to rule 8.124. Rule 8.124 requires that an appellant's appendix contain any item listed in rule 8.122(b)(3) "that is *necessary for proper consideration of the issues … .*" (Italics added.) Such items may include "[a]ny … document filed or lodged in the case in superior court" and "[a]ny exhibit admitted in evidence, refused, or lodged[.]" (Rule 8.122(b)(3)(A), (B).) While the appellate record includes a reporter's transcript of the testimony during the two-day hearing, it does not include any of the 12 exhibits admitted in evidence during the hearing.[10] Those exhibits were used during the hearing to substantiate the rights of the parties, explain their conduct, and support and

---

[10] It appears that Exhibit A, Monica's declaration in support of the March 2021 RFOs, might be the same document found at pages 1,414 through 1,422 of the appendix.

14

challenge their credibility. And as previously noted, some of those exhibits clearly involved issues raised by Monica in this appeal.

To the extent Monica challenges the court's refusal to consider or admit exhibits establishing the amount or reasonableness of her attorney's fees under section 6344, those exhibits are also not in the record. Regardless, Monica has not provided us with reasoned argument and relevant authority to show that the court abused its discretion by excluding any particular exhibit, or that she was prejudiced by the court's error. Evidence Code section 354 prohibits setting aside a judgment or decision "by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice … ." (See *Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1480 [trial court's error in excluding evidence is grounds for reversing a judgment only if the party appealing demonstrates a miscarriage of justice].) Here, Monica only states that the court had an obligation to review "the raw bills" submitted by her—without distinguishing between those that were offered in evidence but rejected and those that were merely marked with exhibit numbers or letters but never offered in evidence—and has not even attempted to show that any specific exhibit was improperly excluded. We cannot base a finding of miscarriage of justice on such untethered generalities.

By failing to provide an adequate record, Monica cannot meet her burden to show error and we must resolve any challenge to the order against her. (See *Hernandez v. California Hospital Medical Center*, *supra*, 78 Cal.App.4th at p. 502.)

## 2. Based on the limited record, Monica did not establish prejudicial error.

Even if we were to consider the merits of Monica's claims, we would conclude that, based on the record before us, she has failed to demonstrate reversible error.

### 2.1. Characterization of the $168,000 distribution from the IAP plan

"Characterization of property, for the purpose of community property law, refers to the process of classifying property as separate, community, or quasi-community. Characterization must take place in order to determine the rights and liabilities of the parties with respect to a particular asset or obligation and is an integral part of the division of property on marital dissolution." (*In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 291.) The most basic characterization factor determinative of whether property is separate or community is the time when property is acquired in relation to the parties' marital status. (*Ibid.*) "Appellate review of a trial court's finding that a particular item is separate or community property is limited to a determination of whether any substantial evidence supports the finding." (*In re Marriage of Dekker* (1993) 17 Cal.App.4th 842, 849.) "But de novo review is appropriate where resolution of 'the issue of the characterization to be given (as separate or community property) … requires a critical consideration, in a factual context, of legal principles and their underlying values, the determination in question amounts to the resolution of a mixed question of law and fact that is predominantly one of law.' [Citations.]" (*In re Marriage of Rossin* (2009) 172 Cal.App.4th 725, 734.)

16

Monica has not shown that the $168,000 that was supposed to be transferred to her from David's IAP plan became her separate property as of March 2018 when the Settlement Agreement was finalized, or January 2019 when the 2019 Judgment incorporating the Settlement Agreement was entered. Paragraph 1 of the Settlement Agreement, titled "Retirement Accounts," states, "Except as set forth herein, each party is awarded his/her own retirement account as his/her separate property." And, as previously noted, paragraph 1.D of the Settlement Agreement provides that the $168,000 from David's IAP plan would "upon execution of the Judgment … *be rolled over into an account to be designated by Monica. The amount rolled over* shall be deemed to include Monica's share of the community property portion of the IAP plan, as well as an equalization payment to Monica to satisfy any and all reimbursement claims and any other claims pertaining to property division and arrears. All remaining funds in the account shall be awarded and/or confirmed to Dav[id] as his sole and separate property." (Italics added.) Thus, the court reasonably found that the $168,000 would only become Monica's separate property once it was "rolled over" into an account designated by Monica, and it is undisputed that Monica never identified or designated an account for this purpose. In fact, Monica appears to acknowledge that her designation of an account for receipt of the $168,000 was a condition precedent set forth in the Settlement Agreement but now claims paragraph 1.D was "drafted incorrectly."

We also agree with the trial court that *In re Marriage of Janes* (2017) 11 Cal.App.5th 1043 is distinguishable. In *Janes*, the parties executed a marital settlement agreement, which was attached to a judgment of dissolution, that awarded the wife

17

approximately $113,392 from the husband's 401(k) retirement account, but the judgment did not mention gains or losses on that amount. (*Id.* at pp. 1045, 1050.) The money was not distributed immediately, and later the wife sought the $113,392 plus the gains and losses resulting from that money in a request for a QDRO. (*Id.* at p. 1046.) In rejecting the husband's argument that the court lacked jurisdiction to modify the earlier judgment of dissolution by awarding the gains and losses to the wife, the court found that the judgment did not need to explicitly reference the gains and losses since it included all the necessary information to make any necessary calculations—$113,392 of the 401(k) account was the wife's separate property as of the date the marital settlement agreement and dissolution judgment were executed. (*Id.* at pp. 1049–1050.) Importantly for our purposes, *Janes* held that assuming the $113,392 was an equalization payment "as opposed to part of the regular division of community property[,] … [t]here is nothing indicating an equalization payment was to be delayed; therefore, we assume the payment was to be made immediately." (*Id.* at pp. 1050–1051.) Here, unlike in *Janes*, the payment to the other spouse was *not* to be made "immediately"—it would only be made after Monica designated an account to receive the funds.

In any event, Monica cites no evidence showing she was prejudiced by any delay in the designation of the $168,000 as her separate property. (See *In re Marriage of Steiner & Hosseini* (2004) 117 Cal. App. 4th 519, 524 [although a rule of court phrased in mandatory language is generally binding on the courts, departure from a rule of court is not reversible error unless prejudice is shown].) Although David's employee retirement plan was joined as a party in 2017, no evidence was

18

presented during the hearing that it incurred gains or suffered losses since 2018 when the Settlement Agreement was signed. And although Monica requested interest in the amount of "$446.03 per diem" in her March 2021 RFOs, she testified she didn't recall how that number was calculated.

For the first time in her reply brief, Monica argues that David could have distributed the funds from his IAP plan into one of the "three separate retirement-based accounts" identified in the Settlement Agreement. We disregard this argument because it was not raised below or in her opening brief. For the same reason, we will not address Monica's argument that the court had a sua sponte obligation to correct its erroneous February 10, 2022 order after it received a February 24, 2022 letter regarding preparation of a QDRO.

In her reply brief, Monica also contends that "as drafted[,]" paragraph 1.D of the Settlement Agreement "did not comport with the Plan Administrator's QDRO requirement." Thus, "funds could not simply be rolled out of the IAP [plan] and paid to Monica." In support of this argument, Monica relies on a January 20, 2022 email bearing no exhibit designation and the February 24, 2022 letter written to the parties *after* the court issued its decision. These record citations, however, don't establish that she could not designate an account to receive the funds until after a QDRO was filed and served on the IAP plan. And even if a QDRO needed to be prepared and served before the $168,000 was transferred into an account designated by Monica— to "avoid taxes and penalties" per the February 24, 2022 letter—the exhibits admitted in evidence at the hearing, and which are not in the record, suggest Monica was partially responsible for the parties' failure to complete the QDRO.

### 2.2. Attorney's fees under section 6344

Section 6344 authorizes an award of attorney's fees and costs to the prevailing party in a proceeding concerning a domestic violence restraining order. (See *Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1508.) During the relevant time period,[11] subdivision (a) of section 6344 provided, "After notice and a hearing, the court may issue an order for the payment of attorney's fees and costs of the prevailing party." By contrast, subdivision (b) of section 6344 provided, "In any action in which the petitioner is the prevailing party and cannot afford to pay for the attorney's fees and costs, the court shall, if appropriate based on the parties' respective abilities to pay, order that the respondent pay petitioner's attorney's fees and costs for commencing and maintaining the proceeding. Whether the respondent shall be ordered to pay attorney's fees and costs for the prevailing petitioner, and what amount shall be paid, shall be determined based upon (1) the respective incomes and needs of the parties, and (2) any factors affecting the parties' respective

---

[11] The Legislature amended section 6344, effective January 1, 2023, to provide as follows: "(a) After notice and a hearing, a court, upon request, shall issue an order for the payment of attorney's fees and costs for a prevailing petitioner. [¶] (b) After notice and a hearing, the court, upon request, may issue an order for the payment of attorney's fees and costs for a prevailing respondent only if the respondent establishes by a preponderance of the evidence that the petition or request is frivolous or solely intended to abuse, intimidate, or cause unnecessary delay. [¶] (c) Before a court awards attorney's fees and costs pursuant to this section, the court shall first determine pursuant to Section 270 that the party ordered to pay has, or is reasonably likely to have, the ability to pay." (Stats. 2022, ch. 591, § 2.) Former section 6344 applies in this case as the court's order denying Monica's request for fees was made on February 10, 2022.

abilities to pay." The standard of review for an order granting or denying a motion for attorney's fees under the Family Code is abuse of discretion. *(In re Marriage of Turkanis & Price* (2013) 213 Cal.App.4th 332, 345.)

Monica failed to establish any abuse of discretion in the court's denial of her fee request. As we noted before, in her opening brief Monica does not state the *amount* sought by her, or how we can determine whether the fees were actually incurred by her, and not previously paid by David, under former subdivisions (a) and (b) of section 6344.[12] Monica also does not cite any admissible evidence supporting her claim that she submitted detailed billing records from her current and former attorneys for section 6344 fees. At best, she relies on billing records attached to her March 2021 RFOs, and the court expressly stated that those attachments were not in evidence. And, as we said before, Monica requested and received awards of attorney's fees throughout the litigation under various Family Code provisions, including under section 6344. The parties' son also requested and obtained his own restraining orders against David and it appears that Monica is seeking fees for his separate action against David.[13] Moreover,

---

[12] The amount sought by Monica also differed in her trial court filings. In her March 2021 RFOs, she sought $46,317 in fees. And although there is no evidence she requested or opposed a restraining order after March 2021, Monica sought an amount no less than $50,000 in fees in her February 8, 2022 trial brief. Then, during the hearing on February 9, 2022, Monica testified she spent "in excess of $50,000. I don't have the exact number in front of me."

[13] On page 51 of her opening brief, Monica cites to a single page in her declaration, found at page 1,420 of the appendix, to support her contention that she submitted detailed billing records from her

Monica does not advance any argument regarding the respective incomes and needs of the parties, or factors affecting the parties' respective abilities to pay attorney's fees, as required under former subdivision (b) of section 6344.

In sum, the record supports the court's finding that Monica did not prove "the fees that were reasonable and necessary for her domestic violence claim." Accordingly, she has not met her burden to establish that the court abused its discretion in denying her fee request under section 6344.

### 2.3. Sanctions under section 271

Finally, we turn to Monica's request for sanctions under section 271. "Section 271 authorizes a fees and costs award as a penalty for obstreperous conduct." (*Robert J. v. Catherine D.* (2009) 171 Cal.App.4th 1500, 1520.) " 'The imposition of sanctions under section 271 is committed to the sound discretion of the trial court. The trial court's order will be upheld on appeal unless the reviewing court, "considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order." [Citation.]' [Citation.]" (*Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142, 1152.)

Monica contends the court abused its discretion in not awarding fees as a sanction under section 271 because David delayed the sale or division of the community property camera

---

attorneys. The cited record only states that Monica paid the *children's* lawyer $4,000 allegedly owed by David as of an unknown date. She does not state that David was ordered to reimburse her for the payment.

lenses and the engagement of QDRO counsel. For the most part, Monica simply ignores the evidence and findings against her. For example, in November 2021 the court took the hearing for her March 2021 RFOs off calendar under the disentitlement doctrine. The court explained that Monica had not complied with a prior order which required her to pay David for child support overpaid by him. Thus, Monica, not David, was responsible for the three-month delay in the adjudication of her claims. And although the court found David was responsible for the delay in dividing the camera lenses, the court implicitly found Monica was not prejudiced by the delay and awarded her "nothing for reimbursement involving the lenses." As for the delay in engaging QDRO counsel, the court found both parties were to blame for delaying resolution of the QDRO issue.

In short, the court did not abuse its discretion in denying Monica's request for sanctions.

## DISPOSITION

The order is affirmed. David Perkal shall recover his costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

LAVIN, Acting P. J.

WE CONCUR:

EGERTON, J.

ADAMS, J.